**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**JOHNSTOWN DIVISION**

| | |
|---|---|
| **MATTHEW KRAUSE; REBECCA KRAUSE; and ISAAC KRAUSE,** | Case No.   2:23-cv-43 |
| Plaintiffs, | **COMPLAINT IN CIVIL ACTION FOR DAMAGES AND DECLARATORY RELIEF** |
| v. | |
| **BLAIR COUNTY, PENNSYLVANIA; RANDY FEATHERS; CITY OF ALTOONA; CLEARFIELD COUNTY, PENNSYLVANIA; BARBARA KRAUSE; THE ESTATE OF TIMOTHY KRAUSE; DOE CORPORATION 1; DOE CORPORATION 2; DOES 1-100, inclusive,** | **Fed.R.Civ.P. 38(b)(1) Notice of Demand for Trial by Jury** |
| Defendants. | |

## COMPLAINT

NOW COMES the Plaintiffs, by and through their lawyers, and in compliance with Fed.R.Civ.P. 9(c), files the within Complaint in Civil Action for Damages and Declaratory Relief, and in support thereof, avers that:

**Parties, Jurisdiction, and Venue**

1.      The First Plaintiff is MATTHEW Krause ("MATTHEW"). MATTHEW is an individual who resides in Clarion County Pennsylvania.

2.      The Second Plaintiff is REBECCA Krause ("REBECCA"). REBECCA is an individual who resides in Blair County Pennsylvania.

3.      The Third Plaintiff is ISAAC Krause ("ISAAC"). ISAAC is an individual who resides in Clearfield County Pennsylvania.

4.     The First Defendant is Blair County, Pennsylvania ("BLAIR"). BLAIR is a political subdivision organized under the laws of the Commonwealth of Pennsylvania.

5.     The Second Defendant is Randy FEATHERS ("FEATHERS"). FEATHERS is sued in his individual capacity, as well as in his official capacity as a police officer for ALTOONA.

6.     The Third Defendant is The City of Altoona, Pennsylvania ("ALTOONA"). ALTOONA is a political subdivision organized under the laws of the Commonwealth of Pennsylvania.

7.     The Fourth Defendant is Clearfield County, Pennsylvania ("CLEARFIELD"). CLEARFIELD is a political subdivision organized under the laws of the Commonwealth of Pennsylvania.

8.     The Fifth Defendant is Barbara KRAUSE ("KRAUSE"). KRAUSE is an individual who resides in Clearfield County, Pennsylvania.

9.     The Sixth Defendant is The Estate of Timothy Krause.  Hereafter in this complaint, "ESTATE" refers to Timothy Krause (e.g., to the actions he committed during his lifetime). The Estate of Timothy Krause was created upon Timothy Krause's death on or about May 26, 2022. Upon information and belief, The Estate of Timothy Krause exists in Clearfield County, Pennsylvania.

10.     The Seventh Defendant is DOE CORPORATION 1. DOE CORPORATION 1 is a corporate entity whose name is not known at this time. DOE CORPORATION 1 is the entity that provides CLEARFIELD with screening services of prospective foster and/or adoptive parents for children who are in CLEARFIELD's custody. Upon discovery of its true name, Plaintiffs will amend this Complaint pursuant to Fed.R.Civ.P. 1, 15.

11.     The Eighth Defendant is DOE CORPORATION 2. DOE CORPORATION 2 is a corporate entity whose name is not known at this time. DOE CORPORATION 2 is the entity that

provides BLAIR with screening services of prospective foster and/or adoptive parents for children who are in CLEARFIELD's custody. Upon discovery of its true name, Plaintiffs will amend this Complaint pursuant to Fed.R.Civ.P. 1, 15.

12.     The Ninth through One Hundred and Eighth  Defendants, DOES 1 to 100 ("DOES"), are unknown to Plaintiffs at this time. They are however all agents, employees, officials, administrators, or otherwise titled individuals and/or other persons who took actions related to the facts alleged herein, for or on behalf of CLEARFIELD and/or BLAIR and/or ALTOONA. Upon discovery of their true names, Plaintiffs will amend this Complaint pursuant to Fed.R.Civ.P. 1, 15.

13.     Plaintiffs bring this lawsuit to redress violations of, *inter alia*, The First Amendment to the United States Constitution, by way of 42 U.S.C. § 1983. Thereby this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

14.     The events and omissions which give rise to the claims asserted in this lawsuit occurred in the geographical territory of this court, in or around Blair County, Pennsylvania and/or Clearfield County, Pennsylvania. Therefore, pursuant to 28 U.S.C. § 1391(b), this district court is the proper venue for this lawsuit.

15.     REBECCA is a resident of Blair County, Pennsylvania. Therefore, the Johnstown Division is the appropriate assignment for this lawsuit.

**Facts of the Case[1]**

16.     All other paragraphs of this lawsuit are incorporated.

17.     On or about October 20, 2008, FEATHERS removed Plaintiffs from the care and custody of Plaintiffs' parents (who were residing in Blair County).

---

[1] Since the facts discussed in this lawsuit occurred years ago, and to young children, many factual specifics cannot be known until discovery opens. This is, in part due to the highly confidential nature of the records kept by the Defendants, whereupon a Rule 45 subpoena and/or Rule 34 requests would be necessary to obtain the information in the first instance.

18.     Upon information and belief, including but not exclusively limited to the fact that Plaintiffs' biological parents never abused Plaintiffs, FEATHERS did not have probable cause to remove Plaintiffs from the care and custody of their biological parents, and did so with the specific purpose of interfering with the Plaintiffs' familial relations in order to, *inter alia*, coerce Plaintiffs' parents as part of a police investigation.

19.     Pursuant to FEATHERS' actions described in the previous paragraph, an initial hearing was held regarding the provision of care and custody to Plaintiffs, who were all minors at this time. Upon information and belief, BLAIR, by and through its respective DOE employees, who upon information and belief were employed in the capacity of that Defendant's Department of Children Youth and Family Services ("CYS"), attended the hearing.

20.     Numerous members of Plaintiffs' biological family attempted to attend the hearing, so as to be considered for or otherwise assume responsibility for the care and custody of Plaintiffs.

21.     Upon information and belief, including but not exclusively limited to FEATHERS stating that Plaintiffs would never be returned to their parents, two or more of the Defendants agreed to take the necessary steps to ensure that Plaintiffs were never reunited with their parents and in an effort thereto, took steps to prevent Plaintiffs' family members from being considered to assume responsibility for the care and custody of Plaintiffs.

22.     Upon information and belief, Plaintiffs, nor their parents, were provided with nor were they made aware of their entitlement to, legal counsel for this hearing. Plaintiffs allege that these failures were the result of a substantial step taken in furtherance of the agreement alleged in the previous paragraph.

23.     As a direct and proximate result of the facts alleged in the previous paragraph, BLAIR and DOE(s) took custody of Plaintiffs, and placed them into the foster care system.

24. Instead of working towards the statutory goal of reunification of the family, BLAIR and DOE(s) sought to terminate Plaintiffs' familial relationships with their parents, by way of seeking the termination of said parental rights.

25. Upon information and belief, in or around 2011, BLAIR and/or FEATHERS communicated with CLEARFIELD, where CLEARFIELD was made aware of, and agreed to, participate in FEATHERS' and BLAIR's scheme to ensure the Plaintiffs were never reunited with their parents. Thereafter, it is alleged that CLEARFIELD agreed to the transfer to it, of Plaintiffs' custody from BLAIR, in order to make it more difficult for Plaintiffs' biological family members including but not limited to their biological parents to find and reunite with Plaintiffs.

26. In furtherance of the agreement referenced in the previous paragraph, CLEARFIELD by and through its respective DOE employees, who upon information and belief were employed in the capacity of that Defendant's CYS, placed the Plaintiffs (and three other children) with KRAUSE and ESTATE, an older white couple, as foster children at their three-bedroom home in Houtzdale Pennsylvania.

27. Upon information and belief, each Defendant knew that KRAUSE and ESTATE were not qualified to be either foster parents, or adoptive parents.

28. Upon information and belief, at some point, one of the Defendants made KRAUSE and ESTATE aware of and they agreed to participate in the scheme to ensure the Plaintiffs were never reunited with their biological parents.

29. KRAUSE and ESTATE originally sent the Plaintiffs to public school and allowed them to engage in activities and have friends outside of the home, and also had the children in separate bedrooms according to sex. REBECCA was in one room, and the five (5) boys were in a different room.

30.     In furtherance of the agreement which now included KRAUSE and ESTATE, CLEARFIELD, KRAUSE, and ESTATE all lied to the Plaintiffs, and informed Plaintiffs that their biological parents were dead, and upon that information, Plaintiffs believe and allege that CLEARFIELD, KRAUSE, and ESTATE fraudulently secured the termination of Plaintiffs' familial relationships, and then CLEARFIELD allowed KRAUSE and ESTATE to fraudulently adopt the Plaintiffs.

31.     KRAUSE and ESTATE filed for and secured name changes for the Plaintiffs. MATTHEW was formerly "Jynnairy Jones;" REBECCA was formerly "Avyonna Williams;" and ISAAC was formerly "Raseen Myers." Upon information and belief, including but not exclusively limited to the fact that KRAUSE and ESTATE changed not just the Plaintiffs' last names (as is customary), but also their first names, said action was taken in furtherance of the conspiracies described herein, in order to make it more difficult for Plaintiffs' biological family members including but not limited to their biological parents, from finding and reuniting with Plaintiffs.

32.     KRAUSE and ESTATE regularly physically and psychologically abused Plaintiffs, by, *inter alia*:

a.   They would use racial slurs at and/or referring to Plaintiffs (all of whom are African-American) in Plaintiffs' presence;

b.   They would beat the Plaintiffs;

c.   They would force the Plaintiffs to remain in stress positions (e.g., standing at a wall for hours at a time);

d.   They would have the Plaintiffs bitten by dogs;

e.   They would lie to the Plaintiffs (e.g., by falsely informing Plaintiffs' that their parents were dead) in order to attempt to break the familial bonds between the Plaintiffs themselves;

f. They forced all six children (five boys, including MATTHEW and ISAAC along with REBECCA) to live in one bedroom. Four of the boys (including ISAAC and MATTHEW) shared bunkbeds, while the fifth boy and REBECCA slept on the floor;

g. They placed camera surveillance throughout the home and spied on Plaintiffs;

h. They forbid, on threat of physical punishment, Plaintiffs from closing the door while in the bathroom; and

i. They forbid, on threat of physical punishment, Plaintiffs from eating food unless it was specifically given to Plaintiffs by ESTATE and/or KRAUSE while simultaneously under-nourishing Plaintiffs.

33.     At one point, one of the boys (who is not a plaintiff in this lawsuit at this time) was physically abused by ESTATE. When the boy's teacher saw his injuries, she asked him what happened, and he informed her that ESTATE "pushed his face into the door" of a vehicle.

34.     The boy's teacher contacted CLEARFIELD's CYS to report child abuse. In response, DOE, a CLEARFIELD employed social worker came to the school and spoke with the six children, including Plaintiffs. After speaking with the children, and without doing any further investigation, DOE closed the investigation, and sent the children back to KRAUSE and ESTATE.

35.     Within approximately three days therefrom, KRAUSE and ESTATE dis-enrolled Plaintiffs and the other children from public school. Upon information and belief, CLEARFIELD did not investigate the suspicious timing of the dis-enrollment or make any other investigation of the Plaintiffs' living conditions.

36.     Thereafter, Plaintiffs began running away from ESTATE and KRAUSE. Upon information and belief, including but not specifically limited to the fact that on several occasions,

the children encountered police officers and other mandatory reporters, that CLEARFIELD and DOES were made aware that Plaintiffs were running away, but did not investigate. Instead, each time, the children were returned to ESTATE and KRAUSE, where they were subjected to further punishment.

37.     Sometime in 2018, ESTATE and KRAUSE were finally arrested for child abuse. They were convicted and sent to prison.

38.     Thereafter and due to the criminal actions, the Plaintiffs' (and the other children's) biological families were able to locate them.

39.     When the biological families made themselves known to CLEARFIELD, CLEARFIELD maintained its membership in the conspiracies described in this lawsuit and refused to even consider those family members' requests to see and/or assume responsibility for the custody and care of, *inter alia*, Plaintiffs.

40.     One aunt rebuffed by CLEARFIELD was a BLAIR approved foster parent. CLEARFIELD maintained its membership in the conspiracies described in this lawsuit and sent the aunt a cease and desist letter.

41.     Instead, CLEARFIELD recycled Plaintiffs through the foster system again, where they remained until they reached the age of majority or otherwise were discharged from foster care due to age. At that point, each of the Plaintiffs reunited with their biological families. Despite that the Defendants destroyed the legal relationship Plaintiffs used to share with their biological families, Plaintiffs have been welcomed home and receive the love and support from which they had been deprived for the majority of their lives.

42.     These causes of action follow:

**COUNT I**

**42 U.S.C. §1983: Interference with Familial Associations (First and Fourteenth**

**Amendments)**

*All Plaintiffs v. FEATHERS, BLAIR, CLEARFIELD, and DOES*

43.     All other paragraphs of this lawsuit are incorporated.

44.     The following claims for the below-described Constitutional violations are brought by Plaintiffs against these Defendants via 42 U.S.C. §1983.

45.     Plaintiffs have a First and Fourteenth Amendment liberty right to be free from governmental interference with their familial associations, and a right to privacy.

46.     Defendant FEATHERS violated this right of Plaintiffs when he removed Plaintiffs from their home without probable cause.

47.     Defendants FEATHERS, BLAIR, and DOES violated this right of Plaintiffs when at the initial hearing and throughout the court proceedings that resulted in the placement of Plaintiffs into foster care, by acting either alone or together to prevent non-parental biological family members of Plaintiffs from assuming the care and custody of Plaintiffs.

48.     Defendants FEATHERS, BLAIR, and DOES violated this right of Plaintiffs when at the initial hearing and throughout the court proceedings that resulted in the placement of Plaintiffs into foster care, by acting either alone or together to prevent Plaintiffs and/or their parents to receive the advice and counsel of an attorney during said proceedings.

49.     Defendants BLAIR and DOES violated this right of Plaintiffs by taking custody of Plaintiffs and placing them into foster care, despite that there was no probable cause to remove Plaintiffs from their homes in the first instance.

50.     Defendants BLAIR and CLEARFIELD and DOES and/or FEATHERS violated this right of Plaintiffs by agreeing to and effectuating the removal of Plaintiffs from BLAIR's

custody in favor of CLEARFIELD's custody to thereupon physically move Plaintiffs from their geographical proximity to their biological families.

51.    Defendants CLEARFIELD and DOES violated this right of Plaintiffs by acting either alone or together with others, falsely informing Plaintiffs that their biological parents were dead, and then fraudulently securing Plaintiffs' adoption.

52.    Defendants CLEARFIELD and DOES violated this right of Plaintiffs after Plaintiffs adopted parents were arrested and convicted of child abuse against, *inter alia*, Plaintiffs, by acting either alone or together with others to refuse to consider allowing Plaintiffs' biological family members to assume custody and care for Plaintiffs, or to even allow Plaintiffs to <u>see</u> their biological family members, and instead, recycled Plaintiffs into the foster care system.

53.    As a direct and proximate result of these Defendants' actions, Plaintiffs were injured and entitled to damages.

**COUNT II**

**42 U.S.C. §1983: State Created Danger, and Failure to Protect Children in Foster Care**

**(Fourteenth Amendment)**

*All Plaintiffs v. CLEARFIELD, KRAUSE, ESTATE, and DOES*

54.     All other paragraphs of this lawsuit are incorporated.

55.     The following claims for the below-described Constitutional violations are brought by Plaintiffs against these Defendants via 42 U.S.C. §1983.

56.     Under the Due Process Clause of the Fourteenth Amendment, state officials may not deprive an individual of life, liberty, or property without due process of law.

57.     Further, when a state places a child in foster care, the state has entered into a special relationship with that child and this relationship gives rise to a duty under the Fourteenth Amendment to the United States Constitution

58.     Defendants CLEARFIELD, KRAUSE, ESTATE, and DOES had a duty to provide for the safety and protection of Plaintiffs since in or around 2011 when CLEARFIELD took custody of Plaintiffs from BLAIR and placed Plaintiffs with KRAUSE and ESTATE. As foster parents, KRAUSE and ESTATE were state actors under Pennsylvania law.

59.     Defendants CLEARFIELD and DOES breached this duty by failing to investigate KRAUSE and ESTATE after these Defendants were on actual notice of abuse occurring by way of the teacher's report of child abuse made to CLEARFIELD against ESTATE, and instead closing the teacher's report.

60.     Defendants CLEARFIELD and DOES breached this duty by permitting KRAUSE and ESTATE to maintain custody and control of Plaintiffs who physically and psychologically abused Plaintiffs, when these Defendants were on actual notice of abuse occurring by way of the teacher's report of child abuse made to CLEARFIELD against ESTATE.

61.     Defendants CLEARFIELD and DOES breached this duty by failing to investigate KRAUSE and ESTATE despite being on actual notice from the numerous mandatory reporters with whom Plaintiffs encountered during their numerous attempts to escape from KRAUSE and ESTATE bearing physical signs of abuse and malnutrition, and instead, returning Plaintiffs to KRAUSE and ESTATE.

62.     Defendants KRAUSE and ESTATE each individually violated their duty to protect Plaintiffs by abusing them, and also failing to intervene against and/or report each others' abuse.

63.     As a direct and proximate result of these Defendants' actions, Plaintiffs were injured and entitled to damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**COUNT III**

**42 U.S.C. §1983: Monell Claims**

*All Plaintiffs v. BLAIR, CLEARFIELD, and ALTOONA*

64.     All other paragraphs of this lawsuit are incorporated.

65.     The following claims for the below-described Constitutional violations are brought by Plaintiffs against these Defendants via 42 U.S.C. §1983.

66.     Defendant BLAIR is liable for its unconstitutional policies and/or customs to remove and/or ratify the unreasonable removal of children including Plaintiffs from their home without a court order or exigent circumstances or any other basis for the children's removal. Said policies and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed throughout this lawsuit.

67.     Defendant BLAIR is liable for its unconstitutional policies and/or customs to detain and/or ratify or otherwise support and defend the unreasonably lengthy detention of children, including Plaintiffs, on false premises in court, after any alleged basis for detention has resolved. Said policies and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed throughout this lawsuit.

68.     Defendant BLAIR is liable for its unconstitutional policies and/or customs to use their powers to remove and/or detain children such as Plaintiffs from their home in order to assist and/or facilitate coercive police investigations of family members of children for crimes unrelated to the safety, health, and welfare of children. Said policies and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed throughout this lawsuit.

69.     Defendant BLAIR is liable for its unconstitutional policies and/or customs to ignore their statutory requirement to attempt to reunify children with their biological families. Said policies and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed throughout this lawsuit.

70.     Defendant BLAIR is liable for its unconstitutional policies and/or customs to allow police officers to dictate the exercise of its duties. Said policies and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed throughout this lawsuit.

71.     Defendant BLAIR is liable for its unconstitutional failure to establish, implement, and follow policies or procedures to ensure actions all DOE actions are taken in compliance with the familial association rights of, *inter alia*, Plaintiffs. The nature of CLEARFIELD's DOE employees whose job inherently entails a risk of breaking familial associations, puts CLEARFIELD on notice of the high potential for unconstitutional behaviors by DOES absent such policies and procedures.

72.     Defendant BLAIR is liable for Plaintiffs' injuries and damages which were directly and proximately caused by its deliberate indifference by way of its unconstitutional policy and/or custom of inadequate training and/or supervision and/or otherwise control DOES to carry out their duties as CYS employees in compliance with Constitutional rights of, *inter alia*, Plaintiffs, to:

   a.  Investigate police removals, such as FEATHERS' removal of Plaintiffs, to ensure that the removal was proper;

   b.  Resist illegal requests by police officers, such as FEATHERS', to use children as coercive investigative tool for police investigations;

   c.  Investigate and/or otherwise appropriately determine to attempt to terminate children's familial association with their biological parents;

   d.  Avoid making false or otherwise unsupported statements in order to secure custody of children; and

   e.  Report or otherwise intervene against those such as FEATHERS who attempt to interfere with dependency proceedings and decisions of BLAIR regarding children including Plaintiffs, or otherwise avoid taking actions

designed to unreasonably interfere with the reunification of children including Plaintiffs with their biological families.

73.     Defendant CLEARFIELD is liable for its unconstitutional policies and/or customs to ratify the unreasonable removal of children including Plaintiffs from their home without a court order or exigent circumstances or any other basis for the children's removal. Said policies and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed throughout this lawsuit.

74.     Defendant CLEARFIELD is liable for its unconstitutional policies and/or customs to detain and/or ratify or otherwise support and defend the unreasonably lengthy detention of children, including Plaintiffs, on false premises in court, after any alleged basis for detention has resolved. Said policies and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed throughout this lawsuit.

75.     Defendant CLEARFIELD is liable for its unconstitutional policies and/or customs to use their powers to detain children such as Plaintiffs in order to assist and/or facilitate coercive police investigations of family members of children for crimes unrelated to the safety, health, and welfare of children. Said policies and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed throughout this lawsuit.

76.     Defendant CLEARFIELD is liable for its unconstitutional policies and/or customs to ignore their statutory requirement to attempt to reunify children with their biological families. Said policies and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed throughout this lawsuit.

77.     Defendant CLEARFIELD is liable for its unconstitutional policies and/or customs to allow children who live with other children who have been abused at the home, to return to said home without reasonable investigation.

78.     Defendant CLEARFIELD is liable for its unconstitutional policies and/or customs to attempt to terminate a child's familial association with the biological family when there are less intrusive options available to it including but not limited to other biological family members.

79.     Defendant CLEARFIELD is liable for Plaintiffs' injuries and damages which were directly and proximately caused by its deliberate indifference by way of its unconstitutional policy and/or custom of inadequate training and/or supervision and/or otherwise control DOES to carry out their duties as CYS employees in compliance with Constitutional rights of, *inter alia*, Plaintiffs, to:

a. Resist illegal requests by police officers and/or other agencies such as BLAIR or the taking of actions designed to unreasonably interfere with the reunification of children including Plaintiffs with their biological families;

b. Screen prospective foster parents such as ESTATE and KRAUSE to ensure they will not abuse children, including Plaintiffs;

c. Investigate and/or otherwise appropriately determine to attempt to terminate children's familial association with their biological parents;

d. Avoid making false or otherwise unsupported statements in order to secure custody of children and/or to have them adopted and/or to terminate children's familial association with their biological parents;

e. Screen prospective adoptive parents such as ESTATE and KRAUSE to ensure they will not abuse children, including Plaintiffs;

f. Investigate and follow up on reports of child abuse;

g. Investigate and follow up on reports of children running away numerous times;

h. Recognize and investigate the signs that a child was abused; and

1                    i.   Recognize and investigate the signs that an individual is a child abuser;

2        80.    Defendant ALTOONA is liable for its unconstitutional policy and/or custom to

3 pressure individuals under investigation by way of securing the unreasonable removal of their

4 children without a court order or exigent circumstances or any other basis for the children's

5 removal and/or its ratification of such actions by its officers such as FEATHERS. Said policies

6 and/or customs directly and proximately caused Plaintiffs' injuries and damages claimed

7 throughout this lawsuit.

8        81.    Defendant ALTOONA is liable for Plaintiffs' injuries and damages which were

9 directly and proximately caused by its deliberate indifference by way of its unconstitutional

10 policy and/or custom of inadequate training and/or supervision and/or otherwise control DOES

11 to carry out their duties as police officers in compliance with Constitutional rights of, *inter alia*,

12 Plaintiffs, to:

13              a.   Properly remove children from their homes;

14              b.   Resist taking actions designed to unreasonably interfere with the

15                    reunification of children including Plaintiffs with their biological families;

16              c.   Resist using children as coercive investigative tool for police

17                    investigations;

18        82.    As a direct and proximate result of these Defendants' actions, Plaintiffs were

19 injured and entitled to damages.

20

21

22

23

24

25

## COUNT IV

### Intentional Infliction of Emotional Distress

*All Plaintiffs v. KRAUSE and ESTATE*

83.     All other paragraphs of this lawsuit are incorporated.

84.     Defendants KRAUSE and ESTATE subjected Plaintiffs to severe and ongoing emotional distress by way of the physical and mental abuse they inflicted on Plaintiffs as described in this lawsuit.

85.     As a direct and proximate result of these Defendants' actions, Plaintiffs were injured and entitled to damages.

**COUNT V**

**Battery**

*All Plaintiffs v. KRAUSE and ESTATE*

86.     All other paragraphs of this lawsuit are incorporated.

87.     Defendants KRAUSE and ESTATE subjected Plaintiffs to offensive and unwanted or consented to touching of Plaintiffs as described in this lawsuit.

88.     As a direct and proximate result of these Defendants' actions, Plaintiffs were injured and entitled to damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**COUNT VI**

**Negligence**

*All Plaintiffs v. DOE CORPORATION 1 and DOE CORPORATION 2*

89.     All other paragraphs of this lawsuit are incorporated.

90.     Defendants DOE CORPORATION 1 and DOE CORPORATION 2 have a duty and responsibility of care to act reasonably in the screening and selection of foster and/or adoptive parents.

91.     Defendant DOE CORPORATION 1 and/or Defendant DOE CORPORATION 2 through one or more of its employees, DOE(s), breached the duty of care and responsibility when it inadequately screened KRAUSE and ESTATE and thereafter facilitated them to foster, and then adopt, *inter alia*, Plaintiffs.

92.     As a direct and proximate result of said inadequate screening, Plaintiffs were deprived of the familial associations and subjected to years of child abuse and are entitled to damages.

WHEREFORE, for each of the causes of action in each of the above counts, Plaintiffs respectfully request Judgment against Defendants, jointly and  severally where appropriate, to include both economic and non-economic compensatory damages to include emotional damages, humiliation, embarrassment, pain and suffering, and loss of enjoyment of life, as well as punitive damages, attorney fees, costs of suit, pre-and post-judgment interest, and any and all other damages and relief available to Plaintiff under any of the aforementioned statutes and/or applicable law as well as any other relief as may be deemed by the Court to be proper. Plaintiffs also respectfully request a declaration that Plaintiffs' civil rights were violated by Defendants.

JURY TRIAL DEMANDED

Respectfully submitted on March 9, 2023:


**HUNTSMAN LAW**

**By:**  **/s/Roy Huntsman**
Roy Huntsman, Esquire
(*Admission Pending*)
10385 North Bristlecone Way
Cedar Hills Utah 84062
888.728.8112 (p)
888.749.5198 (f)
Roy@HuntsmanLaw.com
*Trial Lawyer for Plaintiffs*


**THE TRIAL LAW FIRM, LLC**

**By:**  **/s/Mart Harris**
Mart Harris, Esquire
Pa. Id. No. 319504
445 Fort Pitt Boulevard, Suite 220
Pittsburgh Pennsylvania 15219
412.588.0030 (p)
412.265.6505 (f)
MH@TLawF.com
*Trial Lawyer for Plaintiffs*